### BALDWIN *against* CARTER.

Though parol evidence is not admissible to contradict or controul the import of a bond; yet it is admissible to show the situation of the parties, at the time it was given, the object in view and the consideration.

Where *A*, in contemplation of marriage with *B*, and in consideration thereof, executed a bond to her, the condition of which was, that her personal property should not be taken by him, and converted from her use to his, without her consent; it was held, that this was, in effect, an agreement that such property should remain hers, for her sole and separate use.

Though such bond, as a legal instrument, is extinguished, by the marriage, a court of equity will uphold the agreement and carry it into effect according to the intent of the parties; and where there is no trustee, the husband himself will be considered as trustee.

In this state, the husband does not, on the death of the wife, become entitled, as heir or survivor, to personal property secured to her sole and separate use; but it goes into the hands of her administrator, for distribution.

THIS was a bill in chancery, brought by *Harvey Baldwin*, as administrator of *Sarah Carter*, deceased, against *Abel C. Carter.*

The bill stated the following case : On the 25th of *August* 1838, said *Sarah*, being a *feme sole*, the widow of *Joseph Woodruff*, was the owner of personal estate, of the value of about 4000 dollars, consisting of household furniture of the value of 300 dollars, and sundry promissory notes against responsible persons, amounting to about 3700 dollars, when it was mutually agreed between her and *Abel C. Carter*, the defendant, in consideration of a marriage intended to be had between them, that she should hold said household furniture and promissory notes, and all her property, of every kind, as her own, to her sole and separate use, free from all controul thereof, by her intended husband ; and that he should hold such property, as trustee for her, and not convert it from her use to his, without her consent in writing. To carry this agreement into full effect, he immediately executed a bond to her, which he had procured to be drawn, in the sum of 4000 dollars ; the condition of which was, " that if the property now in the hands of said *Sarah* shall be taken, by said *Carter*, and converted from her use to his, without her consent, in writing or otherwise, then this bond shall be in full force and virtue in law, otherwise to be null and void." This bond was received by her, believing that it was so drawn as

fully to carry into effect said agreement. He, at the same time, declared that he did not wish or expect, by the intended marriage, to obtain any interest in, or controul over, her said property, but that his desire and expectation was, that she should remain as completely the owner thereof, after the marriage, as she then was. On the next day, the marriage took place. During the life of said *Sarah,* the defendant did not attempt to controul said property, but it was, in conformity with said agreement, kept separate from his property. During the marriage, most of the notes were, from time to time, paid to her, and new notes were taken for the avails, payable in the same manner. She died, on the 1st of *March* 1844, intestate, leaving property of the description above-mentioned, of the value of 4000 dollars, and 1750 dollars in money, the avails of one of said notes which had been paid. The defendant declined taking administration on her estate ; and it was granted to the plaintiff, who thereupon demanded said property of the defendant.

The plaintiff averred in his bill, that if said bond was not so drawn as fully to express said agreement and secure the performance thereof, it was through the mistake of the scrivener ; and he prayed that such mistake might be rectified. The plaintiff also averred, that the defendant was a man of small property, and not sufficiently responsible to be trusted with the moneys collectable on the notes in his hands.

On the hearing before the superior court, the plaintiff offered to prove, by the testimony of *Augustus B. Chapin,* that the defendant admitted, that the bond was made in contemplation of marriage, and in consideration thereof, to secure her property, so that he could not squander it, and so that his creditors could not take it. The testimony of other witnessess, and among them the draftsman of the bond, was offered, to show, that the bond was given to secure her property to her sole and separate use, and to prove the mistake alleged in the bill. The draftsman testified, that he had been previously informed, that the defendant intended, on his marriage with said *Sarah,* to secure to her the use of her property ; that he met the parties, the day before the marriage, when they desired him to draw up a writing between them ; that he thereupon drew said bond, and submitted it to them; and that they both said, it would do, or was sufficient, and

he executed it. The evidence so offered was objected to, because the consideration of the bond could not be proved by parol; because parol evidence could not be introduced to controul the legal effect of the writing; and because the evidence did not conduce to prove the mistake alleged.

The court admitted the testimony, subject to the opinion of this court; and having found the facts alleged in the bill, submitted to this court the following questions: 1. Whether such parol evidence was admissible for the purpose for which it was offered? 2. Whether without it, the bond is sufficient evidence of the agreement charged in the bill? 3. Whether upon the facts alleged, and proved, the plaintiff is entitled to a decree in his favour?

The case was thereupon reserved for the advice of this court.

*T. Smith* and *Seymour,* for the plaintiff, contended, 1. That the testimony of *Chapin* and the other witnesses, that the bond was drawn up in contemplation and in consideration of marriage, to secure to the intended wife the property which she then had, for her sole and separate use, was admissible. The situation of the parties, the object in view and the consideration of the contract, may clearly be shown by parol evidence. *Brown* v. *Slater*, 16 *Conn. R.* 192. *Tyrrell* v. *Hope,* 2 *Atk.* 560.

2. That in connexion with such evidence, the bond was sufficient proof of the agreement alleged in the bill, that the wife's property was to remain to her sole and separate use, and free from the controul of her husband. Ante-nuptial contracts having this object in view, are favoured in equity, and will receive such a construction as will carry them into effect according to the intention of the parties. Though the appropriate words are *to her sole and separate use,* yet these words are not necessary, but any others that convey the same meaning, will be sufficient. *Lee* v. *Prieaux,* 3 *Bro. Ch. R.* 381. *Tyrrell* v. *Hope,* 2 *Atk.* 559. 561. *Darley* v. *Darley,* 3 *Atk.* 399. *Fenner* v. *Taylor,* 1 *Sim.* 169. *Rich* v. *Cockell,* 9 *Ves.* 369. 2 *Kent's Com.* 163. The words of this bond, as drawn up, though few and inartificial, are apt and appropriate words to secure the property to the sole and separate use of the wife. It provides, that the property now in her

hands, shall not be taken, by the husband, and converted from her use to his.

3. That if the import of the bond is different, there was a mistake in drawing it up; and the testimony introduced to prove it, was admissible. To prove the mistake alleged, the plaintiff was bound to make out three things : first, an agreement, as set forth ; secondly, instructions to carry that agreement into effect ; and thirdly, an instrument different from the instructions given. Testimony bearing upon either of these points, was *admissible :* its sufficiency is not in question here.

4. That there was not adequate remedy at law. In the first place, the bond was utterly extinguished, by the marriage. Secondly, the penalty of the bond is not sufficient in amount to protect the party. Thirdly, it appears, that the defendant is a man of small property ; and he may die insolvent. Are the representatives of *Mrs. Carter*, in that case, to come in with other creditors, and take a dividend ? Would this be adequate remedy ?

*Church*, (with whom was *Wheaton*,) for the defendant, contended, 1. That in this state, the wife cannot have personal estate to her sole and separate use, without the intervention of a trustee ; and the husband cannot be such trustee. *Dibble* v. *Hutton*, 1 *Day* 221. In *Nichols* v. *Palmer*, 5 *Day* 47. five of the nine judges decided, that a bond, given by a third person to the husband, on a separation, to protect him against debts contracted by her, before marriage, and to provide for her maintenance, was valid ; while the other four judges were of opinion, that even such a bond was void ; and they wholly repudiated the notion of the wife's having separate personal property, even where there is a trustee. With what favour that court would have regarded a contract made directly between the parties, the day before the marriage, that he should have no interest in or controul over her personal property, it is easy to see.

2. That if the wife, by agreement before marriage, may have personal property to her separate use, and may dispose of it, by her own act or by will; yet if it is not so disposed of, and the husband survives, it becomes absolutely his. 2

*Sto. Eq.* 614. (2nd ed.) and cases cited. *Stewart* v. *Stewart*, 7 *Johns. Ch. R.* 229.

3. That no separate estate in the wife is here shown. In the first place, the bond does not say, that this property shall remain hers, during the coverture, or at all; or that it shall not be the husband's; but only, that he shall not convert it from her use to his; *i. e.* that he shall not interfere in the custody and management of it. This would not arrest or suspend the operation of law. The law would stamp it *his*, whether he meddled with it, or not. Secondly, it does not appear from any other facts, alleged and found, that this property was, or was agreed to be, her separate estate, after the marriage.

4. That if the plaintiff is entitled to any remedy, he may have it at law. His intestate took a bond, with a penalty, to secure her rights: let him resort to *that.*

5. That all the parol testimony was inadmissible for the purposes for which it was offered.

WILLIAMS, Ch. J. Was the parol testimony admissible? If the evidence was offered to contradict or controul the bond, as seems to be supposed in the second objection, then we have no hesitation in saying it was not admissible. That principle is too well settled to need illustration or authority. But so far as it went to show the situation of the parties at the time, the object in view and the consideration, we are equally clear, that it was admissible.

In the case of *Tyrrell* v. *Hope,* 2 *Atk.* 558. 560. where, upon a marriage, settlement deeds were made out, by one of which an estate was conveyed to the husband after the mother's death, which ought to have been given to the wife, and which was attempted to be rectified, by a note signed by the husband, that the wife should enjoy and receive the issues and profits of one half of that estate, after the death of her mother, the master of the rolls said, that if it rested on the note alone, no parol evidence ought to be admitted to explain the agreement between the parties. But he said further, I am certainly warranted in admitting this evidence, so far as it goes to the reason and occasion of signing this note. And so far we consider the question settled, by this court,

at the last term, in the case of *Brown* v. *Slater,* 16 *Conn. R.* 192.

The testimony offered to prove a mistake of the scrivener, in drawing the bond, was also objected to, upon the ground that it did not conduce to prove there was any mistake. Now, if all the evidence upon this subject was derived from the draftsman himself, as upon the first reading of the case might appear, there would seem some foundation for this objection ; but it does not appear, (and we are told the fact was not so,) that this testimony from the scrivener was called for by the plaintiff. And when we come to look at all the other testimony, we cannot say, that it did not conduce to prove there was a mistake in the draft of the instrument. This court is not called upon to weigh the testimony, but only to say, whether it was admissible ; to which we cannot return a negative answer.

But aside from any mistake in the instrument, the bond itself, coupled with the fact that it was given in contemplation of a proposed marriage between the parties, and in consideration of it, lays a foundation for the relief sought by this bill.

The woman had a valuable personal property. By the marriage, the property would either become the husband's, or subject to his disposal. Had it been their intention to leave it so, they would have entered into no stipulation concerning it. But they attempt, very inartificially indeed, to guard against this effect ; and he binds himself, in a penalty of 4000 dollars, not to convert that property to his own use, without her consent in writing. What was that but an agreement that it shall remain hers ? It was then hers : the marriage would in law make it his. But he, under his own hand and seal, contracts, that he will not convert it to his own use, without her written consent. If he does not convert it, it must necessarily remain hers. There can be but one opinion as to the intent.

But it is not said, it is to be for her separate use. In the case above cited from *Atk.* the terms were "she shall enjoy the issues and profits," &c. The court say, it must have been for her separate use ; for to what end could she receive it, if it is the property of her husband the next moment ?

*Litchfield,*
June, 1845.

Baldwin
*v.*
Carter.

2 *Atk.* 561. Here, he binds himself not to interfere with it; of course, then, it must remain hers solely and separately.

It is objected, that there is no limitation of time. This is not necessary; nor is it common in transfers of personal property. But if the agreement is in effect a contract that the property should remain hers, there was no propriety in limiting a time.

It was again objected, that the consideration was not the marriage, nor the benefit of the wife, but to delay his own creditors. It is a sufficient answer, that this is not found. It was indeed one reason among others, which the defendant assigned; but it was not unlawful, and it was for her benefit, if an arrangement was made, so that her property should not go to pay his debts.

Again, it is said, a bond has been taken; if she has a remedy, she must resort to that. Bonds of this kind, in contemplation of marriage, are in equity agreements; which courts of equity will see performed. *Prebble* v. *Boghurst,* 1 *Swanst.* 318. *Parks* v. *Wilson,* 10 *Mod.* 517. And it makes no difference, that there is a penalty annexed. Courts of equity consider the penalty only as a collateral guaranty to the agreement, which shall remain a proper subject to be enforced by those courts. 1 *Fonb. Eq.* 161. *Hopson* v. *Trevor,* 2 *P. Wms.* 191. *S. C.* 1 *Stra.* 533. *Howard* v. *Hopkyns,* 2 *Atk.* 370.

These authorities are also an answer to the objection made to this bill, that there is remedy at law.

The law cannot give relief but by way of damages; but chancery, keeping in view the fact that these parties meant to treat this property as the woman's, will compel a specific performance, thus carrying into effect the intentions of the parties, guarding against the inability of the defendant, and protecting, as it always will, property held in trust.

When we look at the object contemplated, in connexion with the writing entered into, and the facts found as to the conduct of the parties, during the marriage, it is apparent, that the intention was, to protect this property from the rule of law, which makes it the husband's. The draftsman has not taken the best method to accomplish the intention; but as it can be fairly ascertained, no reason exists why it should not be carried into effect.

Litchfield,
June, 1845.

Baldwin
v.
Carter.

It was claimed, that upon the death of the wife, the property became the husband's; and the case of *Stewart* v. *Stewart*, 7 *Johns. Ch. R.* 239. and other cases, were cited to support this proposition. That case and the others, so far as we have had opportunity to examine them, proceed upon the ground, that in such cases, where the wife has the power of disposing of her separate property, and does not, it shall go to the husband, as survivor or as heir. The laws of *England* and of *New-York* give him the right, as administrator, or as heir, to the property of the wife. But in states where the husband does not take as administrator, nor as heir, that cannot be the case. On the contrary, that very principle will give it here to the administrator, who only has the right to call for, and distribute, intestate estate. In this case, then, the plaintiff, by those authorities, must be the legal claimant. The husband is not heir, nor can he claim as survivor.

So far we have treated this bond as a valid instrument at law. But if we consider it extinguished, by the marriage, as the plaintiff claims it was—even then courts of equity hold, that contracts of this kind, fairly made, ought to be supported according to their true intent, which they will not permit to be defeated. 2 *Kent's Com.* 163. 165. (2d ed.) And when there is no trustee, they will consider the husband himself as trustee. *Darley* v. *Darley*, 3 *Atk.* 399.

It is said on behalf of the defendant, that this is contrary to the policy of our law, and ought not to be adopted; and indeed, it is claimed, that the contrary principle is established, in the cases of *Hutton* v. *Dibble*, 1 *Day* 221. and *Nichols* v. *Palmer*, 5 *Day* 47.

The defendant's counsel seem to suppose, that there is no difference between an ante-nuptial contract and one made after marriage. Ch. J. *Swift*, however, who was entirely against the decision in the case of *Nichols* v. *Palmer*, does not hesitate to say, that these ante-nuptial contracts will be valid in a court of chancery, and that the husband will be decreed to carry them into specific execution. 1 *Sw. Dig.* 29.; and the cases of *Selleck* v. *Selleck*, 8 *Conn. R.* 85. n., *Andrews* v. *Andrews*, 8 *Conn. R.* 80. and *Brown* v. *Slater*, 16 *Conn. R.* 192. we consider as having settled that question.

The case, then, shortly, is this. This defendant, upon his marriage, stipulates with her whom he is about to marry,

*Litchfield*,
June, 1845.

Baldwin
*v.*
Carter.

that he will not interfere with her property. This he faithfully performs until her death, and then refuses longer to treat it as hers. Ought a court of equity to enforce such an agreement? We think justice requires it; and no authority has been adduced, which prevents the court from administering that justice. We therefore advise, that the plaintiff is entitled to the relief sought.

In this opinion the other Judges concurred, except STORRS, J. who was absent.

Decree for plaintiff.