MARY SZPUNAR DAMASKINOS *vs.* LEONARD A. DAMASKINOS.

Bristol. October 28, 1949. — January 10, 1950.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & COUNIHAN, JJ.

*Marriage and Divorce,* Annulment. *Conflict of Laws. Fraud.*

The law governing nullity of a marriage, except one deemed contrary to the law of nature as generally recognized in Christian countries and one which the Legislature of the Commonwealth has declared shall not be valid because contrary to the policy of our own laws, is that of the place where it was contracted.

A decree granting to a woman annulment of a marriage solemnized in the State of New York was required where it appeared that the libellant was domiciled in this Commonwealth when married and when she brought the libel, that immediately after the ceremony the libellant learned from the libellee and for the first time that he had married her to get out of trouble with the immigration authorities and had refrained from telling her so because he was afraid that she might refuse to marry him if she knew it; that she would not have married him had she known of it; that there was no cohabitation; and that by the law of the State of New York such conduct of the libellee was fraud warranting annulment of the marriage.

LIBEL, filed in the Probate Court for the county of Bristol on September 19, 1947, for annulment of marriage.

The libel was heard by *Fuller*, J., who dismissed it.

*W. A. Torphy & T. F. McGuire*, for the libellant, submitted a brief.

No argument nor brief for the libellee.

COUNIHAN, J. This is a libel for an annulment of a marriage brought in the Probate Court. G. L. (Ter. Ed.) c. 207, § 14. The case is here on an appeal from the dismissal of the libel. The evidence was not reported. The judge made a report of material facts, which may be summarized as follows: The libellant, domiciled in Fall River at the time of the marriage and when the libel was filed, was married to the libellee on December 6, 1946, at Brooklyn, New York. Almost immediately after the ceremony, the libellant learned for the first time, and from the libellee, that he was in difficulties with the immigration authorities and that he needed to show that he was married to prevent deportation to Greece. The libellee married the libellant to get out of trouble with the immigration authorities, and he refrained from telling the libellant of this because he was afraid she might refuse to marry him if she knew of it. She refused to live with him and shortly afterwards returned to Fall River. The parties never cohabited.

The Probate Court had jurisdiction of the libel since, although the marriage was solemnized out of the Commonwealth, the libellant was domiciled in the Commonwealth when married and when she brought this libel. G. L. (Ter. Ed.) c. 207, § 14. *Cohn v. Cohn*, 310 Mass. 126, 129.

It has been settled, with certain exceptions based on public policy not here applicable, that the law governing nullity of marriage is that of the place in which the marriage was entered into. *Levy* v. *Levy,* 309 Mass. 230, 233, and cases there cited. *Craddock's Case,* 310 Mass. 116, 122. It is the contention of the libellant here that the facts found by the judge require a decree of annulment of her marriage to the libellee under the law of the State of New York. The applicable New York statute is as follows: "A marriage is void from the time its nullity is declared by a court of competent jurisdiction if either party thereto: . . . 4. *Consents to such marriage by reason of force, duress or fraud . . .*" (emphasis supplied). Consol. Laws of New York 1930, c. 14, § 7. See also § 1139 of the civil practice act of New York. We may take judicial notice of the law of the State of New York. G. L. (Ter. Ed.) c. 233, § 70.

The libel alleged, but the judge did not specifically find, that the libellant would not have married the libellee had she known of his purpose in marrying her. We think, however, that it ought to be inferred from the findings of the judge that the libellant would not have married had she known the reason why the libellee married her, and that she was induced to marry by his concealment of the purpose of the marriage and his deception.

We have examined the decisions of the courts of the State of New York, and they uniformly hold that fraud practised upon one of the parties to marriage by the other affords a ground for annulment of the marriage, particularly where the marriage was not consummated. And it was said in *Hanson* v. *Hanson,* 287 Mass. 154, 159, "The trend of the authorities is that annulment of an unconsummated marriage may be secured more readily than in a case where the parties have cohabited."

The two leading cases in New York are *di Lorenzo* v. *di Lorenzo,* 174 N. Y. 467, and *Shonfeld* v. *Shonfeld,* 260 N. Y. 477. In the *di Lorenzo* case there was an allegation that the husband's consent to marry was obtained by a fraudulent representation by the wife, before marriage, that

he was the father of a child whom she exhibited to him.
After discovery of this falsity, the husband left his wife
and sought annulment. The court there said in decreeing
annulment: "It is a general rule that every misrepresenta-
tion of a material fact, made with the intention to induce
another to enter into an agreement and without which he
would not have done so, justifies the court in vacating the
agreement. . . . There is no valid reason for excepting the
marriage contract from the general rule. . . . The minds
of the parties did not meet upon a common basis of opera-
tion. The artifice was such as to deceive a reasonably
prudent person . . ." (pages 472–473). In the *Shonfeld*
case there was a misrepresentation of the "fortune" of one
of the parties upon which the other party relied. There it
was decided that what is fraud must be determined by the
circumstances of each case, but "If the proof shows that
the representations were of a nature to deceive an ordi-
narily prudent man who, but for the representations, would
not have consented to the marriage, there is an adequate
basis for a decree. The primary consideration in every
case is the materiality of the representation viewed in the
light of all circumstances by the mind, not of the individual
plaintiff but of an ordinarily prudent man" (page 481).
In *Levy* v. *Levy*, 309 Mass. 230, 236–237, a case involving
a New York marriage, the court was of the opinion that
the misrepresentation there alleged was not of a nature
to deceive the ordinarily prudent man, and for that reason
the libel was dismissed.

Here, however, the situation is different. There was no
representation, the falsity of which could be discovered by
an ordinarily prudent person, but rather a deception and
concealment which so affected the consent of one of the
parties at least as to make this marriage contract invalid
under the laws of New York. New York domestic rela-
tions law, § 10. *Protopapas* v. *Protopapas*, 47 N. Y. Sup.
(2d) 460, 461. *Siecht* v. *Siecht*, 41 N. Y. Sup. (2d) 393,
395. *Truiano* v. *Truiano*, 121 Misc. (N. Y.) 635, 637.
*Laage* v. *Laage*, 176 Misc. (N. Y.) 190, 195. The appli-

cation of the law of New York to the facts found by the judge in this case requires a decree for annulment. The decree dismissing the libel is reversed, and a decree is to be entered for the libellant.

*So ordered.*