10 N.J. Super. 449 (1950)
77 A.2d 288
MARIA CIRULLI, PLAINTIFF-RESPONDENT,
v.
ROSE LICATA AND CALOGERO LICATA, ALSO KNOWN AS CHARLES LICATA, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 27, 1950.
Decided December 5, 1950.
*451 Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.
Mr. Harry Gottlieb argued the cause for respondent (Messrs. Cassman & Gottlieb, attorneys).
Mr. John B. Baratta argued the cause for appellants.
The opinion of the court was delivered by WILLIAM J. BRENNAN, JR., J.A.D.
Defendants appeal from a judgment on a jury verdict entered in Atlantic County Court in plaintiff's favor in an action for money loaned.
The error alleged is the denial by the trial court of defendants' motion for judgment made at the close of the case. Only one ground is pressed on this appeal, namely, that the proofs established the loan was made to further an illegal purpose to evade the immigration laws of the United States, thus barring plaintiff as a matter of law from recovery of the money loaned.
The proceeds of the loan were used to defray the cost of the wedding of plaintiff's grandson, Savanio Bollino, to defendants' granddaughter, Rose Gueriera. The couple were married February 20, 1949, by a Roman Catholic priest.
Defendants contend the marriage was arranged to prevent Bollino's deportation in fraud of the immigration laws. Bollino is an Italian national who entered the United States June 28, 1948, on a tourist visa expiring December 28, 1948. Plaintiff supplied the money for his round trip ticket.
The couple testified for the defendants. Bollino testified plaintiff and members of plaintiff's family had urged him to marry Rose; "You stay here in this country and you get married and stay here with us." Rose testified she had broken the engagement on at least six occasions and that each time plaintiff or a member of plaintiff's family begged her to marry Bollino; "We want to keep him here. We will be such a happy family. Don't send him back. Marry him." The other testimony on defendants' behalf portrayed plaintiff and *452 her daughter, Amelia, as "forcing" the marriage in a frantic effort to assure Bollino could remain in the United States.
If we assume what defendants contend, that the evidence conclusively shows plaintiff was party to a plan to have Bollino married to forestall his deportation, such purpose, on this record, was not illegal because it was clearly shown the marriage was bona fide. It was solemnized by the Roman Catholic Church; it has been a happy marriage, a child has been born to the couple, and both testified they are content with their bargain.
The act of an alien in entering into a bona fide marriage with the express purpose "to avoid deportation" is not illegal. United States v. Dorto, 5 F.2d 596 (1st Cir. 1925). The law distinguishes between such a marriage and a marriage entered into not in good faith but as a mere sham, or pretense, formed for the purpose of "evading" a judgment of deportation. Wong Hueng v. Elliott, 179 Fed. 110 (9th Cir. 1910); Hopkins v. Fachant, 130 Fed. 839 (9th Cir. 1904); U.S. ex rel. Lubbers v. Reimer, 22 F. Supp. 573 (D.C.N.Y. 1938); U.S.C.A., Title 8, § 213(a).
Moreover, Bollino's marriage does not prevent his deportation. United States v. Karnuth, 66 F. Supp. 969 (D.C.N.Y. 1945); Kavadias v. Cross, 82 F. Supp. 716 (D.C. Ind. 1948), 177 F.2d 497 (7th Cir. 1949). It merely supplies the basis upon which in the event of deportation proceedings he may invoke the discretionary authority of the Attorney General of the United States to suspend the deportation order under U.S.C.A., Title 8, § 155(c), which empowers the Attorney General to suspend deportation of certain aliens who prove good moral character for the preceding five years if the Attorney General finds "(a) that such deportation would result in serious economic detriment to a citizen or legally resident alien who is the spouse, parent or minor child of such deportable alien." Kansas, U.S. Immigration, Exclusion and Deportation (3d ed. 1938), p. 156; United States v. District Director of Immigration, 82 F.2d 630 (7th Cir. 1936). In addition, if deportation is suspended for *453 more than six months, the statute requires a report of the facts to be submitted to the Congress and unless the Congress, within the time limited by the statute, "passes a concurrent resolution stating in substance that it favors the suspension of such deportation," the Attorney General is required to deport the alien. This statute was in effect on the date of the loan, October 22, 1948.
It follows the proofs did not evidence a loan contract to be viewed in its setting as having the "inherent tendency * * * to use sinister or corrupt means to accomplish the end sought," Stone v. William Steinen Mfg. Co., 133 N.J.L. 593 (E. & A. 1946); at best a case was made showing there was fair doubt as to such tendency of the contract, in the circumstances, and the question was properly "left to the jury for determination." McCabe v. Kupper, 4 N.J. Super. 178 (App. Div. 1949).
The evidence of a transaction between plaintiff and Bollino almost three months after the loan and a few weeks before the marriage does not strengthen defendants' position that no jury question was presented. When Bollino was applying for an extension of his visa and required proof that he had means of support, plaintiff deposited $2,000 to his credit in a savings bank and permitted him to use the bank book to represent these were his funds. That money was returned to plaintiff June 13, 1949, several months after the wedding. Whether this transaction wears a badge of fraud is not an issue in this case; if relevant at all to the earlier loan transaction, it merely supports defendants' insistence that plaintiff did everything she could to keep Bollino in this country. But we have said that that motive as related to the transaction to help defray the expenses incident to the bona fide marriage is not illegal.
We have been discussing defendants' argument on their premise the loan was made to further the marriage as a means of preventing deportation. The proofs, however, are conflicting whether plaintiff was party to any such purpose. Her testimony was Bollino told her he had fallen in love with *454 Rose, and that she first heard of a contemplated marriage when defendant, Charles Licata, visited her on the day prior to the delivery of the money and asked her for a loan because Rose's parents wanted a big wedding and needed help; that he, Licata, had his own funds tied up in his business but could repay her one month after the wedding. She insisted she had no desire to keep Bollino here except "to have him here for the period of time that the law permitted." She denied she had done anything to bring the marriage about or that she had ever pressed Rose to go through with it on any occasion when the engagement was broken and said she had no interest at any time in having Bollino stay in this country. Plaintiff's daughter, Amelia, testified it was Rose's family, not Bollino's, who were anxious for the marriage and hoped it would be a means of keeping Bollino here because they, Rose's family, liked him and thought he would be a good husband for Rose.
On a motion for judgment at the end of the case, the Supreme Court has said, "* * * evidence will not be weighed but `all the proofs which support the claim of the party against whom the motions are made must be accepted as true and he is entitled to the benefit of all legitimate inferences which may be drawn therefrom. Where fair minded men might honestly differ as to the conclusions to be drawn from the proofs, the questions at issue should be submitted to the jury.' (Citing cases.)" Fischetto Paper Mill Supply, Inc., v. Quigley Co., Inc., 3 N.J. 149, at 154 (1949). There was no error in denying the motion for judgment.
Affirmed.