## KAZIMIERZ KURYS v. MICHALINA R. KURYS

SUPERIOR COURT     HARTFORD COUNTY     FILE No. 141412

Memorandum filed February 18, 1965

*Waldemar J. Lach,* of Hartford, for the plaintiff.

*Rosenzweig & Fagan,* of New Britain, for the defendant.

COTTER, J. This is a motion for an order that a temporary injunction issue "requiring the Defendant to immediately reinstate her petition made to the United States Department of Justice, Immigra-

tion and Naturalization Service to grant to the Plaintiff nonquota immigrant status."

The parties, in their middle twenties, met in the summer of 1964. Michalina, a naturalized citizen, and the plaintiff, a Polish national in the United States under a visa issued at Warsaw, Poland, courted during the summer and fall and then decided to marry. The court has no reason to doubt the testimony of Kazimierz, the plaintiff, that he "loved her and wanted to marry her," and her testimony that she married because she liked him. Before the marriage ceremony at Sacred Heart Church in New Britain on October 17, 1964, the parties discussed the "problem," as he puts it, of the bridegroom's remaining in the United States, and they agreed that she would file a petition, as required by the Immigration and Nationality Act, §§ 101(a), 245 (66 Stat. 166, 217, as amended, 8 U.S.C. §§ 1101(a), 1255), in behalf of the plaintiff to qualify him for nonquota immigrant status so that he might remain with her in the United States as her husband and as a permanent resident. Otherwise the husband, by virtue of his birth in Poland, would be chargeable to the nonpreference portion of the quota for Poland, which is available only to persons on that waiting list before April, 1960.

After the marriage, Mrs. Kurys gave up her apartment and job in New Britain and moved to Chicopee, Massachusetts, to live with her husband. Thereafter, they came to a parting of the ways because of conflict as to whether they should move to New Britain to live and work. This marital discord, which does not seem from the evidence produced in this court to be irreparable at this time, prompted Michalina on December 7, 1964, to withdraw the visa petition she filed on October 23, 1964, six days after the marriage. The plaintiff has been

granted until May 11, 1965, to stay in the country. There is no cause of action pending for either a divorce or a legal separation. There is no question that there was a mutual understanding and agreement before the marriage took place that the petition would be filed. The marriage was consummated and the petition was filed. It is only because the marriage did not work out and the petition was withdrawn that this action was instituted. This situation is not uncommon and a trial court has ordered a party to reinstate an application for adjustment of a party's status. See opinion in *Scalzo* v. *Hurney,* 225 F. Sup. 560 (E.D. Pa. 1963).

The gravamen of Mrs. Kurys' complaint is that her husband does not earn enough money and she will have to support him and therefore he married her in order to stay here. By implication, she would like the court to believe that he entered into the marriage contract by fraud. This is not borne out by the evidence. The court can only find that the marriage was originally entered into in good faith and the parties honestly intended to truly be man and wife and remain blissfully married.

A marriage entered into in good faith which is bona fide is not illegal even though made with the express purpose "to avoid deportation." *Cirulli* v. *Licata,* 10 N.J. Super. 449, 452. However, where the parties married merely to permit an alien to remain in the United States under an agreement between themselves that they would not live together and a divorce would be secured within six months, mutual consent was lacking and there was not a valid marriage. *United States* v. *Rubenstein,* 151 F.2d 915 (2d Cir.), cert. denied, *Rubenstein* v. *United States,* 326 U.S. 766; see *Davis* v. *Davis,* 119 Conn. 194. So, if an alien marries a citizen of this country for the only purpose of entering the United States, and

without any intention of assuming the duties and responsibilities of the marriage, in a proper case an annulment may be decreed. *Damaskinos* v. *Damaskinos,* 325 Mass. 217; 55 C.J.S., Marriage, § 34(b).

The court cannot find that this was a sham marriage between an alien and a United States citizen to obtain a fraudulent nonquota status, as stated in *Papageorgiou* v. *Esperdy,* 212 F. Sup. 874 (S.D. N.Y.). This promise upon the part of the defendant wife was not one which imposed an unreasonable restriction on the marriage, nor one which would promote mercenary considerations so as to be against public policy and render the marriage itself illegal. This promise was one incidental to the main object of the marriage contract. See 17 C.J.S., Contracts, § 233.

Equity will intervene where the plaintiff has no adequate remedy at law. Where an agreement was entered into in contemplation of marriage, our court will compel specific performance of such a contract, "thus carrying into effect the intentions of the parties." *Baldwin* v. *Carter,* 17 Conn. 201, 207. "[A]nte-nuptial contracts will be valid in a court of chancery," and a party "will be decreed to carry them into specific execution." Id., 208.

In the view that the court takes of the case, the issues are found for the plaintiff and an order may enter as asked. The injunction may issue.