[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The present case arises from a judicial dissolution action pursuant to General Statutes § 33-896, filed by the plaintiff, Value Computer Exchange, LLC, against the defendant corporation, Advance Computing Solutions, Inc. (Advance Computing). The plaintiff owns 100 shares of stock in the defendant corporation. Thomas Willard is an officer and director of the defendant corporation who was made a party defendant by motion on July 17, 1999. The plaintiff alleges in the first count that Willard acted in a manner that is illegal, oppressive, or fraudulent, in that, in 1998, he distributed to himself compensation that exceeded the compensation of the corporation's other officer and director by over one hundred thousand dollars. The plaintiff alleges that Willard received the additional compensation without the approval of the board of directors, as required by the by-laws of the corporation. The plaintiff further alleges that it is necessary to wind up the corporation for the protection of its rights.
In the second count, the plaintiff alleges that as a shareholder, it has sufficient voting power to dissolve the corporation pursuant to the certificate of incorporation. The third and final count alleges that the directors are deadlocked in the management of the corporate affairs and the shareholders are unable to break the deadlock. The plaintiff alleges that for these reasons, it is necessary to wind up the corporation to protect its rights.
On June 30, 1999, Willard filed an offer to purchase shares CT Page 4579 pursuant to General Statutes § 33-900. The offer states that "Thomas Willard, owner of fifty percent (50%) of the outstanding shares of the defendant (100 shares), hereby offers to purchase the remaining fifty percent (50%) of the outstanding shares (100 shares) from the plaintiff for their fair value." Willard also moved to discharge the receiver appointed by the court, Gill, J.,
on May 19, 1999. The court granted the motion to discharge receiver on July 17, 1999.
On July 21, 1999, the plaintiff accepted Willard's offer to purchase its shares for their fair value. Further, the plaintiff agreed to accept fair value of the shares and the terms of purchase to be agreed upon by the parties pursuant to General Statutes § 33-900 (c)[1], or accept fair value of the shares and the terms of purchase to be determined by the court after an evidentiary hearing conducted under General Statutes § 33-900 (d) through (g). The parties have not reached an agreement regarding the value and terms of the purchase, nor has either party moved the court to determine the fair value of the shares.
On December 6, 1999, Willard filed the present motion pursuant to General Statutes § 33-900 (b) to revoke his prior election to purchase outstanding shares. In his motion, Willard also consents to the dissolution of the corporation pursuant to General Statutes §§ 33-881 and 33-896 (b)(1). In the event that his election to purchase is not revoked, Willard gives notice that he intends to voluntarily dissolve the corporation pursuant to General Statutes § 33-900 (g). Willard moves the court to permit him to revoke his prior election to purchase shares; enter an order dissolving the corporation pursuant to General Statutes §33-896 (b); and enter a protective order pursuant to Practice Book § 13-5, prohibiting further discovery by any party related to the fair value of the plaintiff's shares. The plaintiff filed an objection to Willard's motion to revoke election to purchase shares on December 17, 1999.
General Statutes § 33-900 (a) provides: "In a proceeding by a shareholder under subdivision (1) of subsection (a) or subdivision (2) of subsection (b) of section 33-896 to dissolve a corporation that has no shares listed on a national securities exchange or regularly traded in a market maintained by one or more members of a national or affiliated securities association, the corporation may elect or, if it fails to elect, one or more shareholders may elect to purchase all shares owned by the petitioning shareholder at the fair value of the shares. An CT Page 4580 election pursuant to this section shall be irrevocable unless the court determines that it is equitable to set aside or modify the election." (Emphasis added.) General Statutes § 33-900 (a).
The statute further provides that after an election has been filed, the dissolution proceeding "may not be discontinued or settled, nor may the petitioning shareholder sell or otherwise dispose of his shares, unless the court determines that it would be equitable to the corporation and the shareholders, other than the petitioner, to permit such discontinuance, settlement, sale or other disposition." General Statutes § 33-900 (b).
"Ordinarily, if the language of a statute is plain and unambiguous, [courts] need look no further than the words because [courts] assume that the language expresses the legislature's intent. . . . In seeking to discern that intent, courts look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.)Office of Consumer Counsel v. Department of Public UtilityControl, 246 Conn. 18, 29, 716 A.2d 78 (1998).
General Statutes § 33-900 became effective January 1, 1997, and is substantially similar to the Model Business Corporation Act (MBCA). The analogous MBCA official comment to General Statutes §33-900 states that "it is rarely necessary to dissolve the corporation and liquidate its assets in order to provide relief: the rights of the petitioning shareholder are fully protected by liquidating only his interest and paying the fair value of his shares while permitting the remaining shareholders to continue the business." Connecticut Business Corporation Act Sourcebook, MBCA official comment, § 33-900, p. 255. The comments further suggest that the provision mandating the irrevocable election to purchase shares is "intended to reduce the risk that either the dissolution proceeding or the buyout election will be used for strategic purposes." Id., p. 256.
The official comments caution the court to "distinguish between dissolution petitions predicated on genuine abuse and those brought for other reasons." (Internal quotation marks omitted.) Id. The petitioning shareholder seeking dissolution is also at risk because his "shares are, in effect, subject to a `call' for 90 days after commencement of the [dissolution] proceeding." Id. CT Page 4581 Further, "[t]he petitioner becomes irrevocably committed to sell his shares . . . once an election is filed and may not thereafter discontinue the dissolution proceeding or dispose of his shares . . . without permission of the court." Id. The court is "specifically directed to consider whether such action would be equitable from the standpoint of the corporation and the other shareholders." Id.
Willard argues that the court should allow him to revoke his election to purchase shares because the parties' respective valuations of the shares are so far apart that it is unlikely that he will be able to afford to purchase the shares. Willard argues that his offer to purchase shares was based on an initial fair value of the shares, dated December 31, 1998 of $360,000. Subsequently, through his own receiver, Willard obtained a valuation of the shares on August 18, 1999, at $390,000.
The plaintiff argues that Willard may not revoke his election because it is irrevocable under General Statutes § 33-900 (a). The plaintiff's expert, John Kramer, estimated the fair value of the shares as of March 31, 1999 was in the range of $1,000,000 to $1,400,000.
General Statutes § 33-900 (c) provides, "[i]f, within sixty days of the filing of the first election, the parties reach an agreement as to the fair value and terms of purchase of the petitioner's shares, the court shall enter an order directing the purchase of the petitioner's shares upon the terms and conditions agreed to by the parties." General Statutes § 33-900 (d) provides, however, "[i]f the parties are unable to reach an agreement as provided for in subsection (c) of this section, the court, upon application of any party, shall stay the proceedings and determine the fair value of the petitioner's shares as of the day before the date on which the petition was filed or as of such other date as the court deems appropriate under the circumstances."
It is not equitable to allow Willard to revoke his election to purchase shares on the ground that the parties have reached disproportionate valuation of the shares. As the official comments suggest, the plaintiff, by filing the present dissolution action, placed itself at risk where its shares would be subject to a "call" for a period of 90 days. The comments further suggest that the reason the election is irrevocable is to reduce the risk that the buyout will be used for strategic CT Page 4582 purposes. See Connecticut Business Corporation Act Sourcebook, MBCA official comments, § 33-900, p. 258. In the event that the parties are unable to reach an agreement on the fair value of the shares, either party can move this court for a judicial determination of the fair value of the shares. See General Statutes § 33-900 (d). In the present case, however, neither party has moved the court to determine the value of the shares. It is not equitable to allow Willard to revoke his election to purchase shares simply because the parties have failed to reach an agreement on the fair value of the shares, where both parties have an adequate remedy at law. See Kurys v. Kurys,25 Conn. Sup. 495, 498, 209 A.2d 526 (1965) ("Equity will intervene where the plaintiff has no adequate remedy at law."). Accordingly, Willard's motion to revoke election to purchase shares is denied.
Willard further moves the court to enter an order dissolving the corporation pursuant to General Statutes § 33-896 (b). General Statutes § 33-896 (b) provides, in relevant part, "[t]he superior court for the judicial district where the corporation's principal office . . . is located shall dissolve a corporation: (1) In a proceeding by a holder or holders of shares having voting power sufficient under the circumstances to dissolve the corporation pursuant to the certificate of incorporation; (2) in a proceeding by a shareholder or a director when it is established that (A) . . . the directors are deadlocked in the management of the corporate affairs and the shareholders are unable to break the deadlock. . . ." General Statutes § 33-899
(a) provides "[i]f after a hearing the court determines that one or more grounds for judicial dissolution described in section33-896 exist, it may, in the case of the grounds specified in subsection (a) of said section, and shall, in the case of grounds specified in subsection (b) of said section, enter a decree dissolving the corporation. . . ."
Absent a hearing including the taking of evidence, a court cannot enter a decree of dissolution of a corporation. See General Statutes § 33-899; see also Chance v. Norwalk Fast Oil,55 Conn. App. 272, ___ A.2d ___, cert denied, 251 Conn. 929, ___ A.2d ___ (1999) (affirming trial court's decree of dissolution pursuant to General Statutes §§ 33-896 (b) and33-899, after the taking of evidence including exhibits and briefs). Willard's motion to dissolve the corporation pursuant to General Statutes § 33-896 (b) is premature and is hereby denied, because the court has not had an opportunity to hear evidence on the dissolution issue. CT Page 4583
Willard also moves to voluntarily dissolve the corporation under General Statutes § 33-900 (g). Willard argues that he would have the sole ability to voluntarily dissolve the corporation under that section and that his intention to dissolve the corporation is sufficient to conclude these proceedings and avoid the further waste of judicial resources.
It is true, as Willard argues, that once the court enters an order setting the value of the petitioning shareholder's shares, the plaintiff ceases to be a shareholder of the corporation and Willard would possess the ability to voluntarily dissolve the corporation. See General Statutes § 33-900 (f)[2]. However, Willard's action to voluntary dissolve the corporation under General Statutes § 33-900 (g) is not ripe because the court has not entered an order directing the purchase of the plaintiff's shares. Moreover, Willard's mere intention to voluntarily dissolve the corporation and conclude this litigation is insufficient because the present dissolution proceeding may not be discontinued or settled following an election to purchase unless the court determines it is equitable to do so. See General Statutes § 33-900 (b). Accordingly, at the present stage in the litigation, Willard cannot voluntarily dissolve the corporation under General Statutes § 33-900 (g).
Willard moves this court to enter a protective order pursuant to Practice Book § 13-5 prohibiting further discovery by any party related to the fair value of the plaintiff's shares. Practice Book § 13-5 provides: "Upon motion by a party from whom discovery is sought, and for good cause shown, the judicial authority may make any order which justice requires to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. . . ."
"A finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements." (Internal quotation marks omitted.) Rosado v. Bridgeport RomanCatholic Diocesan Corp., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 300272 (December 8, 1994,Levin, J.). Willard's motion for a protective order prohibiting further discovery related to the fair value of the shares is denied because Willard has not demonstrated potential harm sufficient for a finding of good cause.
For the foregoing reasons, Willard's motion to revoke election CT Page 4584 to purchase shares and consent to dissolution is denied.
SANDRA VILARDI LEHENY, J.