### UNITED STATES v. DORTO.

(Circuit Court of Appeals, First Circuit.
May 12, 1925.)

No. 1808.

**1. Marriage ⬅➡20(2)—Requisites of "marriage per verba de presenti" stated.**

To constitute a "marriage per verba de presenti," the parties must agree to become husband and wife presently, and the consent which is the foundation and essence of the contract must be mutual and given at the same time, and must not be attended by an agreement that some intervening thing shall be done before the marriage takes effect, or that it be publicly solemnized.

**2. Aliens ⬅➡46—Citizens ⬅➡7—Marriage ⬅➡ 20(2)—Facts held to establish common-law marriage, rendering the wife a citizen and not subject to deportation.**

Where alien woman and citizen agreed to marry, and began to live together as wife and husband, and the woman was introduced by the citizen to his friends as his wife, before the Cable Act (Comp. St. Ann. Supp. 1923, § 4358a et seq.) took effect, there was a valid common-law marriage by which the wife became an American citizen, precluding deportation of wife under such act after it took effect, though her primary desire in getting married was to avoid deportation, and though their ceremonial marriage was celebrated after act took effect.

Appeal from the District Court of the United States for the District of Rhode Island; Arthur L. Brown, Judge.

Petition for writ of habeas corpus by Emilie Carlevale Dorto against the United States. Writ granted by District Court (300 F. 568), and the United States appeals. Affirmed.

Harold A. Andrews, Asst. U. S. Atty., of Providence, R. I. (Norman S. Case, U. S. Atty., of Providence, R. I., on the brief), for the United States.

George F. O'Shaunessy and Peter Leo Cannon, both of Providence, R. I. (Peter C. Cannon, of Providence, R. I., on the brief), for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. The agreed facts in this habeas corpus case show that the petitioner landed in New York on June 14, 1922, and was excluded because the Italian quota was full. She then instituted habeas corpus proceedings, which were dismissed. On appeal, she was bailed. Her appeal was dismissed April 25, 1923. Meantime, when free on bail she went to Providence, R. I., and there met Dorto, now her husband. Her present petition, filed on June 16, 1924, goes on the ground that there was a common-law marriage before the Cable Act (42 Stat. 1021 [Comp. St. Ann. Supp. 1923, § 4358a et seq.]) took effect on September 22, 1922. The agreed facts show that she had been advised by her New York attorneys that, if she could marry an Ameri-

can citizen, she could avoid deportation. She met Dorto about August 1, 1922, and told him her situation. He agreed to marry her. Two or three days after, they began to live together as man and wife at Dorto's tenement. Witnesses testified that, during August, Dorto introduced her as his wife. The record shows that there was mutual love between them, and that at the time of the trial in June, 1924, she was expecting a child soon to be born of the marriage.

It also appears that on September 9, 1922, they applied to a magistrate in Attleboro, Mass., for a license to marry, and were told that they must wait two weeks. This resulted in a ceremonial marriage at Attleboro on September 23, one day after the Cable Act took effect. The pertinent parts of this act are as follows:

"Sec. 2. That any woman who marries a citizen of the United States after the passage of this act, or any woman whose husband is naturalized after the passage of this act, shall not become a citizen of the United States by reason of such marriage or naturalization; but, if eligible to citizenship, she may be naturalized upon full and complete compliance with all requirements of the naturalization laws, with the following exceptions:

"(a) No declaration of intention shall be required.

"(b) In lieu of the five-year period of residence within the United States and the one-year period of residence within the state or territory where the naturalization court is held, she shall have resided continuously in the United States, Hawaii, Alaska, or Porto Rico for at least one year immediately preceding the filing of the petition. * * *

"Sec. 6. That section 1994 of the Revised Statutes and section 4 of the Expatriation Act of 1907 are repealed. * * * *"

The court below, without a flat finding as to the validity of the common-law marriage, in a learned and interesting opinion, sustained the writ, on the ground that the Cable Act "establishes a new class of aliens, the alien wives of American citizens," and that the Immigration Act of 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼a et seq.) does not authorize the deportation of such aliens, unless falling within the sexually immoral class. See section 19 (section 4289¼jj). There is no contention that this petitioner does fall within that class.

The government contends that the court below erred in sustaining the writ on a ground not set up in the petition. We find it unnecessary to consider this aspect of the case.

For we are of the opinion that the writ must be sustained on the ground alleged, viz. that the petitioner became an American citizen by virtue of a valid marriage to an American citizen before the Cable Act took effect.

[1] Common-law marriages are generally held valid; they have never been held invalid in Rhode Island. The implications of the pertinent decisions are in favor of their validity Williams v Herrick, 21 R. I. 401, 43 A. 1036, 79 Am. St. Rep. 809; Peck v. Peck, 12 R. I. 485, 34 Am. Rep. 702. The requisites of such common-law marriages are, as stated in Odd Fellows' Beneficial Association v. Carpenter et al., 17 R. I. 720, 24 A. 578, as follows:

"In order to constitute a marriage per verba de presenti, the parties must agree to become husband and wife presently. The consent which is the foundation and essence of the contract must be mutual and given at the same time, and it must not be attended by an agreement that some intervening thing shall be done before the marriage takes effect, or that it be publicly solemnized. That is to say, it must contemplate a present assumption of the marriage status, in distinction from a mere future union."

[2] The agreed facts bring this case completely within this rule. Unusual significance attaches to the facts: (1) As to the agreement to marry; (2) to the assumption of the marriage relation; and (3) to the holding forth to acquaintances by Dorto of the petitioner as his wife—from the fact that her primary and initial desire was for the legal status of marriage as a bar to deportation proceedings. The case is thus sharply distinguished from the not infrequent case of parties entering into illicit relations, or in which the evidence shows there was a mere executory agreement for a marriage. This petitioner wanted, in August, 1922, the legal status of a married woman, so that she might avoid deportation. Dorto knew that and agreed to marry her so as to give her then and there this desired status. Under such circumstances, the fact that there was, a little later, a ceremonial marriage, has little or no tendency to control the natural inference that from the beginning immediate marriage, and not illicit relations, or future marriage, was the purpose of both parties. That love, mutual attraction, and a child have resulted from a union thus primarily motived are fortunate results.

We find no case in which, on facts like those now before the court, a common-law marriage has not been held valid. See 26 Cyc. 836 et seq., notes and cases; Love v.

Love, 42 Okl. 478, 142 P. 305, L. R. A. 1915E, 109, notes and cases.

The decree of the District Court is affirmed.