[S. F. No. 14802. In Bank.—January 23, 1934.]

GEORGE H. BRAGG, Sr., Respondent, v. KATHERINE BRAGG, Appellant.

J. E. McCurdy for Appellant.

Kirkbride, Wilson & Brooks and John D. Willard for Respondent.

SEAWELL, J.—Defendant Katherine Bragg appeals from a judgment of the Superior Court of San Mateo County, which decreed the cancellation of certain deeds conveying to her a joint tenancy interest in described real property in the county of San Mateo, and quieted title thereto in plaintiff George H. Bragg, Sr. The action for cancellation of said deeds was consolidated for trial with a divorce action filed against defendant Katherine Bragg by plaintiff George Bragg, Sr. The court granted a nonsuit in the divorce action on the ground that the testimony of plaintiff George Bragg was not sufficiently corroborated (sec. 130, Civ. Code), and he has not taken an appeal from said judgment of nonsuit.

The parties intermarried on December 2, 1926. On September 14, 1930, during the temporary absence of his wife, plaintiff George Bragg left their domicile, which constitutes the property involved in this action, and thereafter filed suit for divorce. At the date of the marriage plaintiff was seventy-five years of age and defendant was fifty-five. Plaintiff was a widower with four adult children, all of whom maintained their own homes. Defendant was a widow and had a married daughter. Plaintiff and defendant had known each other for more than thirty years, and at intervals during that period they had been neighbors in five different cities. Plaintiff and his first wife had been married approximately fifty years, and at the time of the death of the wife were residing in the property involved in this action. Upon the death of his first wife plaintiff moved to San Francisco to live in a hotel, and within a few months sought the companionship of defendant, who resided in a hotel near by. Some time thereafter they discussed marriage. Both desired a home and companionship. Letters written by Mr. Bragg indicate that it was first planned that he should build a new home and dispose of his house in San Mateo. Apparently this plan was abandoned and after their marriage they went to live in the San Mateo home.

On December 11, 1926, nine days after marriage, plaintiff George H. Bragg executed a gift deed conveying an undivided one-half interest in the home place to Katherine Bragg, and said deed was recorded on December 16, 1926. The property consisted of a four-room cottage on a lot 50 by 128 feet. At the time of trial it was valued at $3,950 by a bank appraiser. On January 31, 1927, husband and wife joined in execution of a deed conveying said property to Emma W. Crawford, who immediately reconveyed to them as joint tenants, and these two deeds were recorded on February 1, 1927. The circumstances concerning the execution of said deeds will be set forth more fully hereinafter.

In his complaint for cancellation plaintiff alleged that said conveyances were executed at the insistent request and persuasion of defendant, and upon her express promise to be a true and faithful wife, and to render his declining years happy, peaceful and contented; that defendant married him for the express purpose of obtaining title to his property, or as much thereof as possible, and obtaining title to the

balance thereof upon his death; and that she entered into the marriage and made said promises without any intention of being a true and faithful wife and did not attempt to fulfill her promises and agreements in this regard.

The court found all allegations in the complaint for cancellation of said deeds to be true. The gravamen of the charge of fraud against defendant is that she entered into her marriage with plaintiff, and procured said conveyances to be executed, expressly promising to be a true and faithful wife to him and to make his declining years happy, peaceful and contented, and that she had no intention of performing, and did not in fact perform, said promises. A promise made without any intention of performing it constitutes fraud. (Sec. 1572, subd. 4, Civ. Code.) In support of these charges plaintiff testified that his wife treated him more like a stranger than a husband; that she was never sympathetic with him, and showed him very little affection; that she did not cook his breakfast after the first few months; that she scolded and nagged him and found fault with everything he tried to do in the interest of conjugal felicity and comfort; that on one occasion when he came home with a cold she told him that she would not take care of him and that he would have to get a nurse or go to the hospital; that on another occasion she accused him of taking a nickel watch, which she later found she had misplaced. We are of the view that the evidence will not sustain the charge of fraud.

At the date of the marriage, December 2, 1926, plaintiff owned an unimproved lot in San Mateo in addition to the property involved in this action, and had some cash in the bank, which, it would seem, was largely expended in buying new furniture for the home where they resided. He was employed as secretary of the Heavy Hardware and Shop Supply Association at a salary of $180 a month, which was later cut to $170 and then to $160. In March, 1930, upon the merger of this association with another organization, he was retired and was paid $100 per month for six months. In 1929, plaintiff built a house upon the unimproved lot with funds derived from a loan of $3,800 on the property, which he subsequently sold for $5,025. He realized about $700 in cash and a note for $275 from the sale, the balance going to discharge the loan and expenses. He lost the $700

in the stock market, and at the time of the trial was dependent on his children. Defendant testified that at the date of the marriage she had about $1,000 in the bank, and that she had invested $3,000 in stocks. She had sold the stocks and spent the proceeds.

The papers executed in connection with the loan which plaintiff procured in 1929 upon the property upon which the new house was built described him as a widower. He testified that he had taken a copy of the judgment decreeing the property to be community upon the death of his first wife to the loan company for reference, and that by reason thereof the loan company described him as a widower, and that he did not read the papers over carefully before he signed them. Defendant refused to accept this reasonable explanation and charged plaintiff with misrepresenting his status. She also told him that he could not sell the property without her signature. Two unexecuted quitclaim deeds, dated August 28, 1929, were introduced in evidence. By one Mrs. Bragg conveyed all her interest in the property on which the new house was situate to plaintiff, and by the other, plaintiff quitclaimed to her his interest in the home place. Thereafter he consulted a title company and learned that as the property was his separate property, acquired before marriage, defendant's joinder was not necessary. Nothing further was said or done with reference to these unexecuted quitclaim deeds. It was not shown that defendant had requested that said quitclaim deeds be executed, or that she had ever requested plaintiff to convey to her an interest in the property upon which the new house was built. Said property was not covered by the deed of gift and the joint tenancy deed sought to be canceled in the action herein.

Regarding the circumstances connected with the execution of the deeds sought to be canceled, plaintiff testified a few days after their marriage his wife said to him that she would like to have an interest in the property to assure her a home if anything should happen to him. He told her he would provide for that in his will, but that did not satisfy her and therefore he consulted an attorney who had represented him upon his first wife's death. The deed of gift conveying to her an undivided interest in the home prop-

erty was executed on December 11, 1926, and recorded on December 16, 1926. According to plaintiff, defendant thereafter asked for a joint tenancy deed. On January 31, 1927, at the office of plaintiff's attorney, they joined in executing a deed to a stenographer in said attorney's office, who conveyed back to them as joint tenants. These two deeds were recorded on the following day. On February 24, 1927, defendant filed a declaration of homestead on said property, but at no time during the marriage did she inform plaintiff thereof. Defendant denied that she had brought up the subject of the execution of the deed of gift, or thereafter suggested the change to a joint·tenancy deed, but the trial court accepted the testimony of the plaintiff on this point.

We are of the view that the judgment canceling said deeds and decreeing that defendant has no interest in the property described therein must be reversed. ▮ The general rule is that before one of the spouses is entitled to an annulment of the marriage contract on the ground that the marriage was induced by fraud, it must appear that the defendant has made false statements upon matters which the state deems vital to the marriage relationship, or the evidence must be clear to the effect that the spouse against whom the annulment is sought at the time the marriage was contracted did not intend to perform marital duties, but on the contrary assumed the relation with the sole intent of obtaining fraudulently the property of the other, or with the intent of gaining thereby some advantage which inheres in the matrimonial state. (*Mayer* v. *Mayer,* 207 Cal. 685 [279 Pac. 783]; *Millar* v. *Millar,* 175 Cal. 797 [167 Pac. 394, Ann. Cas. 1918E, 184, L. R. A. 1918B, 415].) By reason of the importance that the marriage status bears to our social structure, and the obvious difficulty of determining the character of the motives and reasons which lead persons into the matrimonial state, the acts and grounds which the law recognizes as sufficient to justify an annulment of marriage for fraud (sec. 82, Civ. Code) are few indeed. We need not discuss this specific subject of annulment of marriage further than to say that the strict rule applicable to annulment of marriages on the ground of fraud is somewhat relaxed when the action is to cancel a deed or deeds executed as an incident to the marriage on the ground of fraudulent representations inducing the marriage and con-

veyances. ▮ Nevertheless, it is not the policy of the law to set aside transfers of property because of broken prenuptial promises or agreements made by the parties to the marriage as to love, affection and high regard each will bear for the other. Every marriage contract impliedly imposes such duties upon both spouses. Allegations that a spouse had no intention of performing his or her marital obligations at the time the marriage was solemnized, or thereafter when a conveyance to such spouse was executed, must be supported by unequivocal evidence that such spouse was moved by a fraudulent intent. Subsequent failure to fulfill prenuptial or postnuptial promises made in good faith does not of itself constitute actionable fraud for which cancellation of deeds between husband and wife may be had.

As illustrative of the policy of the law, we cite: *Tillaux* v. *Tillaux*, 115 Cal. 663 [47 Pac. 691]; *Hendrickson* v. *Hendrickson*, 95 Cal. App. 487 [272 Pac. 1079]; *Murdock* v. *Murdock*, 49 Cal. App. 775 [194 Pac. 762]; *Donze* v. *Donze*, 88 Cal. App. 769, 775 [264 Pac. 294]; *Dale* v. *Dale*, 87 Cal. App. 359 [262 Pac. 339]. In *Dale* v. *Dale*, the husband and wife had become estranged and the husband conveyed certain community property to the wife as her separate property as an inducement for reconciliation and renewal of marital relations. They were unable to live in harmony and the husband brought suit for divorce. In the divorce action the trial court decreed that said property was community property, rather than separate property of the wife. In reversing that portion of the decree the court said concerning the instruments of transfer: "They were voluntarily made by the grantor at his own suggestion for the purpose of reconciling their differences. Evidently this effort was a failure. Respondent then brought this suit for divorce and sought to set aside these conveyances. This, then, was nothing more than a failure of purpose, or of consideration. Neither the complaint, the findings, nor the evidence warrants a charge of a lack of good faith on the part of appellant. It was not alleged, and is not contended, that she deceived respondent in making this agreement to avoid trouble, or that she procured the conveyances by this means with a previous intention not to fulfill her promise. . . . So far as the record is concerned, both parties entered upon the negotiations in perfect good faith with a view of

securing a reconciliation. All that is charged is that she afterward failed to fulfill her agreement. This is an insufficient showing upon which to set aside a deed upon the ground of fraud or mistake.''

■ In the case now before us the plaintiff alleged that when defendant entered into the marriage and soon thereafter induced him to convey a joint tenancy interest to her she had no intention to perform her marriage vows, or to be a true and faithful wife and make plaintiff's declining years happy, peaceful and contented. By finding all allegations of the complaint to be true, the court impliedly held that defendant married plaintiff with the fraudulent intent alleged. But in our view, on no reasonable construction will the evidence sustain said finding of fraudulent intent. On the contrary, the evidence impels the conclusion as a matter of law that defendant married plaintiff in good faith, and that she, as well as plaintiff, was actuated by the belief that they could live together harmoniously and comfortably. In fact, they did live together for almost four years, and plaintiff himself admitted that there were times when ''things would go along in pretty good shape''. ■ It is the general rule that a party who would rescind a transaction for fraud must act promptly on discovery of the fraud, and not thereafter ratify the transaction. Section 82 of the Civil Code, providing for annulment of marriages, expressly provides that a marriage may be annulled where the consent of either party was obtained by fraud, ''unless such party afterwards, with full knowledge of the facts constituting the fraud, freely cohabited with the other as husband and wife''. (Subd. 4, sec. 82.)

Plaintiff testified that the conduct of defendant upon which he relied to establish that she entered into the marriage with fraudulent intent commenced almost immediately after the marriage. If said conduct in fact indicated to plaintiff that defendant had entered into the marriage and induced the conveyances with fraudulent intent, he should have acted sooner to separate from her, rather than to confirm the marriage and conveyances by continued cohabitation.

That plaintiff held out to defendant the offer of a home as an inducement to the marriage is apparent from two letters he wrote to her before marriage which were intro-

duced in evidence. There is no showing that defendant was the aggressor in urging the marriage. That defendant may have wished plaintiff to convey to her an interest in the home property, rather than to rely on plaintiff protecting her by a will, which would be ambulatory in nature, does not, taken alone, or with the other circumstances, detailed, establish that she married him from purely mercenary motives, and without an intent to perform her wifely duties. The change from tenancy in common to joint tenancy would result in protection of both parties. If they held as tenants in common, upon the death of either spouse the children of the other might claim an interest under the laws of succession. In our view it appears from the evidence as a matter of law that both parties entered into the marriage in good faith, and that subsequent inharmony, bitterness and distrust developed between them. The record fails to show fraud in the inception of the conveyances.

The judgment appealed from is reversed. The order denying a new trial is nonappealable and the appeal therefrom is dismissed.

Thompson, J., Shenk, J., Curtis, J., Langdon, J., and Waste, C. J., concurred.

Rehearing denied.