[Civ. No. 33123.    Second Dist., Div. One.    Apr. 30, 1969.]

ANNA MARIA LAMBERTI, Plaintiff and Respondent, v. GUISEPPE LAMBERTI, Defendant and Appellant.

Kwan, Cohen & Lum and Hiram W. Kwan for Defendant and Appellant.

Sidney M. Kaplan for Plaintiff and Respondent.

FOURT, Acting P. J.—This is an appeal from a judgment which granted to plaintiff an annulment of her marriage to defendant.

Plaintiff and defendant met each other sometime during the very latter part of December 1965. Defendant had come to the United States (apparently from Italy) as a visitor only, and since the time allowed had expired, he was required by the immigration authorities to leave this country before the end of January 1966. Defendant's immigration problem was such that it could have been settled and solved had he married a citizen of the United States. His status thereby would have changed and ultimately he could have become a permanent resident. Plaintiff had never been married before.

The parties agreed to marry each other. In order to forestall the deportation of defendant, the parties agreed that they would enter into a civil ceremony on January 22, 1966, and that at about Easter, in April 1966, they would be wedded in a religious ceremony in the Roman Catholic Church

to which both belonged. It was further understood that the plans for the later church wedding ceremony would be made sometime in February 1966. The parties were to go to the priest and to take such steps as were necessary under the circumstances. It was also agreed and understood that until the church ceremony occurred the parties would not cohabit or live together as man and wife—that the marriage would not be consummated until after the church wedding. Plaintiff ascertained from representatives of the church that the procedure as indicated was not violative of any rule of the church and that the religious wedding could properly follow the civil ceremony as contemplated.

Immediately following the civil ceremony (on the same day), the parties started the procedural steps with the immigration authorities to avoid the deportation of defendant. As this was done, defendant's ardor seemed noticeably to cool toward plaintiff. He refused to go to the church or to the priest to make any arrangements for the religious ceremony; he would come to see plaintiff only when someone would pick him up and take him to the home of plaintiff's parents where plaintiff resided. When a little later on however, there were indications that the immigration authorities were making an investigation of defendant's situation, he quickly made arrangements to occupy a room at the home of plaintiff's parents to the end that it would appear to the investigators that plaintiff and defendant were living together as husband and wife which in fact they were not. When defendant believed that the investigation was completed he removed himself from the home and continued to evade any plans to complete the religious ceremony. The parties never lived together as husband and wife, defendant never contributed anything to the support and maintenance of plaintiff—the marriage was never consummated. Admittedly plaintiff would not have participated in the civil ceremony had defendant not agreed and promised to enter into the Catholic Church wedding at a later date.

Plaintiff brought her action for annulment charging fraud. Defendant denied any fraud. In a trial before the court where the judge heard and saw the various witnesses testify, he ordered a decree for plaintiff as requested. The judge indicated that he was prepared to make findings in support of his order; however, by a written stipulation of counsel, findings were waived. The court signed a judgment of annulment of

the marriage and plaintiff's maiden name was restored to her.

Defendant filed a timely notice of appeal from the judgment.

In order to determine what constitutes sufficient fraud to annul a marriage there must be regard for the whole status of both parties and the circumstances which induced the contract—in short, the fraud must be determined by the circumstances of each case. We think it necessarily follows that an annulment of an unconsummated marriage may be secured more readily than one in a situation where the parties have cohabited as husband and wife.

This is not a case where the only problem involved is whether the parties married to forestall deportation proceedings. Admittedly the plaintiff in this case knew of the contemplated deportation proceedings but the act of an alien in entering into a marriage with the express purpose to avoid deportation is not necessarily illegal. (*United States* v. *Dorto* (1st Cir. 1925) 5 F.2d 596.)

Each of the parties here is of the Catholic faith. From the testimony of plaintiff it is made to appear that the representation and promise of defendant that the civil ceremony would be followed by the religious ceremony was very material to plaintiff as an observant Roman Catholic. She could well have been concerned with one of the most vital elements of the marriage and family life, namely, the manner of rearing any children. In other words defendant's promises were a misrepresentation of a material fact and were of such a nature as to deceive an ordinarily prudent person. Religion, of course, should not under any circumstances be used as a cloak to conceal some other fault; at the same time the right of an individual to his or her religious conviction is so ingrained in our philosophy of life and government that a court should not hesitate to give full credence to such a claim when made as in this case.

We are persuaded that the rule is that where one prospective spouse, in order to induce the other to enter into a civil marriage, makes a promise of a subsequent religious ceremony without intending to keep it, an annulment will be granted, at least where as in the present case there was no consummation by cohabitation.

Findings were waived and the sole question as to the sufficiency of the evidence is whether it supports the judg-

ment. (See *Stark* v. *County of Alameda,* 182 Cal.App.2d 20 [5 Cal.Rptr. 839].)

We conclude that the proof is more than sufficient to support the determination that appellant's objective in marrying respondent was to acquire an advantageous alien status and that he made the promises he did make solely to induce her to have a civil ceremony without any intention of fulfilling his promises once his underlying purpose had been accomplished. She did not discover the fraud until after the civil ceremony and it was then that appellant made it clear that he had no intention of marrying respondent in the church.

The judgment is affirmed.

Lillie, J., and Thompson, J., concurred.