[Civ. No. 42942. Second Dist., Div. Three. July 24, 1974.]

In re the Marriage of JUDITH ELLEN TURNER and
MANUCHEHR RABIE.
JUDITH ELLEN TURNER RABIE, Respondent, v.
MANUCHEHR RABIE, Appellant.

**COUNSEL**

Sidney Broffman for Appellant.

Botney & Gollub and Lorraine C. Gollub for Respondent.

**OPINION**

**COBEY, J.**—Manuchehr Rabie (hereafter Manuchehr) appeals from a judgment declaring his marriage to Judith Ellen Turner Rabie (hereafter Judith) to be a nullity. (Civ. Code, § 4425, subd. (d).)[1] The appeal lies. (Code Civ. Proc., § 904.1, subd. (a).)

### FACTS[2]

On February 12, 1970, Manuchehr, an Iranian citizen, met and proposed that day to one Delia Lopez. A friend of Manuchehr asked Ms.

---

[1]Section 4425, subdivision (d), reads: "A marriage is voidable and may be adjudged a nullity if any of the following conditions existed at the time of the marriage:
"...................................................

"(d) The consent of either party was obtained by fraud, unless such party afterwards, with full knowledge of the facts constituting the fraud, freely cohabited with the other as husband and wife."

[2]Upon appeal every intendment is to be indulged in which tends to support the judgment, and every reasonable inference which tends to support the trial court's findings must be accepted. (*Clewett* v. *Clewett,* 136 Cal.App.2d 913, 914 [289 P.2d 512].)

Lopez on that day whether she was a United States citizen. She replied in the affirmative. As she was then married, but separated, Manuchehr convinced her to start at once dissolution proceedings against her husband. When she thereafter informed Manuchehr that her lawyer advised her that she would not be able to remarry for some time, he grew impatient, and the relationship ended.

Manuchehr then met Judith on April 4, 1970, at a bus stop. He initiated a conversation with her, and asked her whether she was a United States citizen. She said that she was. During this first meeting, he proposed marriage to her. They met daily after that, and on April 9 a marriage date in July was set. Manuchehr wanted to marry Judith sooner. On April 10, the two had dinner with Iranian friends of Manuchehr, at which time one of Manuchehr's friends convinced Judith to marry Manuchehr immediately in Las Vegas. The two couples then drove to Las Vegas and Judith and Manuchehr were married early the next day.

On the way back from Las Vegas, Manuchehr's friend told Judith that she should immediately apply for Manuchehr to the Immigration Department for a "green card," a registration card issued to permanent resident aliens that, among other things, makes the obtaining of employment easier. This card was apparently only available to Manuchehr if he were married to a United States citizen. Judith immediately applied for the card. The card was obtained around the latter part of October.

During the intervening six months, Manuchehr and Judith lived together, and their child was conceived. They had only minor marital discord.

In September, however, just prior to obtaining the "green card," Manuchehr telephoned Ms. Lopez and told her that he "married . . . [Judith], this fat pig, because . . . [I] was in trouble and . . . [I] needed the green card." Ms. Lopez also testified that he told her that "he wanted to stay in the country and he needed the green card. . . . [H]e married her, but he did not love her, he loved me, . . . [Judith] was a big fat, ugly pig and he'd laugh every time he said this. . . . [¶] But he didn't love her. He loved me. This is what he kept saying."

After Manuchehr received the "green card," his marriage to Judith quickly deteriorated. They began having violent fights, and Manuchehr would hit his wife. At this time Judith accused her husband of marrying her for the "green card." Judith ordered Manuchehr to move out of their home approximately three weeks after he received the card. Manuchehr immediately began living with Ms. Lopez.

Judith filed this action on January 6, 1971, to have her marriage adjudged a nullity on the basis of fraud, after learning from others, including Ms. Lopez, that her husband had told them that he married Judith for the "green card." The trial court found that Manuchehr fraudulently "induced . . . [Judith] to marry him so that . . . [Manuchehr's] status with the Immigration Authorities would change and he could be eligible for a 'green card' which would enable him to seek employment in the United States." It also found that Judith "did not freely cohabit with . . . [Manuchehr] after she learned of the facts constituting the fraud."

## DISCUSSION

Manuchehr contends that substantial evidence does not exist to support the trial court's judgment. Specifically he argues that there is no substantial evidence to support the trial court's finding of fraud, and alternatively, that the fraud proved was not of the type for which a judgment of nullity is permitted. Finally, he contends that any fraud proved was "condoned" by Judith because she continued to cohabit with him freely after she learned of the fraud.[3]

We disagree. As stated in *Bragg* v. *Bragg*, 219 Cal. 715, 720 [28 P.2d 1046]: "The general rule is that before one of the spouses is entitled to [a judgment of nullity] on the ground that the marriage was induced by fraud, it must appear that the [respondent] has made false statements upon matters which the state deems vital to the marriage relationship, or the evidence must be clear to the effect that the spouse against whom the [judgment of nullity] is sought at the time the marriage was contracted did not intend to perform marital duties, but on the contrary assumed the relation with the sole intent of . . . gaining thereby some advantage which inheres in the matrimonial state."

 In the case at bar, the evidence shows that Manuchehr spent much of the first four months of 1970 looking for a woman to marry who would help him secure a "green card." When Ms. Lopez could not dissolve her marriage fast enough for his purposes, he quickly met, proposed to, and married Judith, although the evidence indicates that he possessed a

---

[3]Manuchehr also contends that as the party petitioning for a judgment of nullity, Judith was required (but failed) to prove her case by clear and convincing evidence.

It is true that *at trial* this heavy burden is placed on the party petitioning for a judgment of nullity. On appeal, however, a judgment will not be disturbed if the evidence and reasonable inferences therefrom reasonably support the judgment, even if such evidence and reasonable inferences would also support a contrary result. The choice of inferences is for the trial court. (*Maslow* v. *Maslow,* 117 Cal.App.2d 237, 242-243 [255 P.2d 65].)

very low opinion of her. Manuchehr resumed his relationship with Ms. Lopez while still married to Judith, even before he received his "green card," and he told Ms. Lopez and others that he only married his wife in order to obtain the card. Consequently, his marriage to Judith, which had proceeded fairly normally while they were applying for the card, quickly disintegrated as soon as he had obtained his goal. When his wife forced him to move out of their home, he immediately began living with Ms. Lopez. This constitutes substantial evidence to support the trial court's finding that Manuchehr fraudulently induced his wife to marry him solely in order to obtain the "green card," and not in order to fulfill his marital duties to her.

█ Manuchehr argues that even if he did fraudulently induce Judith to marry him, such fraud was not vital to the marital relationship, and that he did in fact fulfill all of his marital duties to Judith. He points out that he lived with his wife, held himself out as her husband, and they engaged in fruitful sexual relations.

This argument is beside the point. Manuchehr's duties and obligations to Judith included more than mere cohabitation with her. It was his duty to offer Judith his sympathy, confidence (*Hawkins* v. *Hawkins,* 104 Cal. App. 608, 612 [286 P. 747]), and fidelity. (See *Schaub* v. *Schaub,* 71 Cal. App.2d 467, 477-479 [162 P.2d 966].) He also had the duty to try to live his whole life with her. (*Kilburn* v. *Kilburn,* 89 Cal. 46, 50 [26 P. 636].) In the instant case, however, there is substantial evidence tending to show that Manuchehr never intended to fulfill any of these marital duties, especially the duties to remain faithful to Judith and to remain married to her. The trial court could reasonably infer from the evidence that he intended to desert his wife as soon as it was expedient.

█ Where fraud is so grievous that it places the injured party in an intolerable relationship, it robs the marital contract of all validity. Equity will not deny relief where a deceitful plan, laid and consummated, inevitably defeats the essential purposes of a marriage. (*Schaub* v. *Schaub, supra,* 71 Cal.App.2d at pp. 476-477.) █ The evidence here, therefore, constituted an adequate basis for a judgment of nullity.[4]

---

[4]It is true that Manuchehr did not leave Judith immediately upon securing the immigration "green card." If he had, this rapid departure would have constituted overwhelming evidence of his fraudulent design. The fact that he did not leave her immediately, however, does not negate the remaining evidence. In fact, given the facts that he resumed his relationship with Ms. Lopez even before he obtained the card, and that he began living with her immediately after Judith expelled him from their home, it would appear that Judith's expulsion of Manuchehr may have preceded by a very short time his plan to leave her.

■ Manuchehr's contention that Judith "condoned" the fraud because she freely cohabited with him after she learned of his deceit, is also without merit. First, it should be noted that "condonation" is not a defense in a nullity proceeding. (*Millar* v. *Millar*, 175 Cal. 797, 809 [167 P. 394].) The proper defense is ratification. Second, Judith did not ratify the fraud. The evidence actually indicates that although Judith had suspicions prior to forcing her husband out of their home that he married her solely for the "green card," this suspicion was not confirmed until well after he moved out. Suspicion, or a belief founded upon inconclusive circumstances, is not the "full knowledge of the facts constituting the fraud" that constitutes ratification of a voidable marriage. (*Schaub* v. *Schaub*, *supra*, 71 Cal.App.2d at p. 480.) The evidence is clear, therefore, that she did not freely cohabit—or cohabit at all—with Manuchehr after she learned of the fraud. In any event, the trial court has discretion to decide when knowledge was obtained. (*Handley* v. *Handley*, 179 Cal.App.2d 742, 750 [3 Cal.Rptr. 910].) It did not abuse the discretion.

The judgment is affirmed.

Ford, P. J., and Allport, J., concurred.