2008 OK CIV APP 98

**Mohammad Ali SEIRAFI–POUR, Petitioner/Appellee,**

v.

**Masoumeh BAGHERINASSAB, Respondent/Appellant.**

**No. 102,670.**

Court of Civil Appeals of Oklahoma, Division No. 2.

Oct. 21, 2008.

Floyd W. Taylor, Taylor & Associates, Oklahoma City, OK, for Petitioner/Appellee.

Douglas S. Crowder, Talley & Crowder, Norman, OK, for Respondent/Appellant.

Opinion On Remand by JANE P. WISEMAN, Judge.

¶1 Masoumeh Bagherinassab (Appellant) appeals from an order of the trial court, which annulled her marriage to Mohammad Ali Seirafi–Pour (Appellee).  The issue on appeal is whether the trial court's decision that the parties' marriage had been procured by fraud practiced by Appellant is supported by the evidence.  We find that the trial court's decision to annul the marriage due to fraud is supported by the evidence and affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2 Appellee and Appellant were married in Iran on August 29, 2002, and again in a ceremony in the United States on February 22, 2003. Prior to the Iranian ceremony, Appellee entered into a prenuptial agreement with Appellant's family regarding the dowry he would pay upon Appellant's demand. Appellee claims that Appellant orally promised him she would never make demand for the dowry.

¶3 The parties returned to the United States together in December 2002 after Appellant secured a visa. Appellee testified that Appellant left him just a few days after returning to the U.S. They reconciled shortly thereafter and then separated again in April 2003 for approximately four months. In September, Appellant returned to Iran to visit her family. While she was out of the country, Appellee filed for divorce in Iran and also filed for annulment in Oklahoma.

¶4 At trial, Appellee testified that Appellant constantly ridiculed him and refused to consummate their relationship through sexual intercourse, all of which was denied by Appellant. After two days of testimony, the trial court found that Appellee established by clear and convincing evidence that Appellant fraudulently induced him into the alleged marriage, granted Appellee an annulment, and refused to enforce the premarital agreement regarding the dowry claimed by Appellant.

¶5 On appeal, Appellant claims that the trial court erred in refusing to enforce the prenuptial agreement and in relying on contradictory testimony to find that Appellee proved by clear and convincing evidence that Appellant fraudulently induced him into the marriage.

¶6 After completion of briefing on appeal, Appellee filed a motion to dismiss the appeal claiming Appellant had remarried, thus making the appeal moot. Appellant failed to respond to the motion, and this Court granted Appellee's motion to dismiss. The dismissal, based on *Davis v. Flint*, 1928 OK 34, 265 P. 101, stated that Appellant "cannot accept the benefits of the judgment and rec-ognize its validity without waiving her right to pursue the appeal of that judgment." We subsequently denied Appellant's motion to reconsider or vacate the dismissal.

¶7 Appellant then petitioned the Oklahoma Supreme Court for certiorari claiming the appeal was not moot because she was not asking for her marriage to be reinstated but rather for the judgment to be recast from one for an annulment to one for a divorce and for the enforcement of the prenuptial agreement. In her petition, Appellant cited cases that prove an exception to the *Davis* rule, stating that an appellant does not waive the right to appeal in situations where the appellant could receive a more favorable judgment but not a less favorable one. She asserted that "[i]t is possible for her to obtain a more favorable judgment, insofar as having the judgment for annulment transmuted into a decree of divorce will grant her contractual and property rights that may provide her with some assets, but it is not possible to obtain a worse outcome than what she is appealing." The Supreme Court granted certiorari, vacated this Court's order of dismissal, and remanded "for a consideration of the record and briefs."

## STANDARD OF REVIEW

¶8 A trial court's power to annul a marriage is based in equity. *See Brooks v. Sanders*, 2008 OK CIV APP 66, ¶18, 190 P.3d 357, 360; *see also In re Mo-se-che-he's Estate*, 1940 OK 453, 107 P.2d 999 ("A District Court, under its broad, general equity jurisdiction conferred by the Constitution, has power and jurisdiction to annul a marriage . . . ."). "In an equity case this court will examine the whole record and will reverse the judgment of the trial court if found to be against the clear weight of the evidence or contrary to established principles of equity." *Mayfair Bldg. Co. v. S & L Enters., Inc.*, 1971 OK 42, ¶4, 483 P.2d 1137, 1138–39.

## ANALYSIS

¶9 Appellant asserts that the trial court committed reversible error in deciding that she fraudulently induced Appellee into marriage. The question before this Court is

whether Appellee presented sufficient evidence to the trial court to support his fraud claim.

█ ¶ 10 The trial court cited cases involving "green card" fraud when it announced its decision to annul the marriage. "[I]f an alien marries a citizen of this country for the only purpose of entering the United States, and without any intention of assuming the duties and responsibilities of the marriage, in a proper case an annulment may be decreed." *Kurys v. Kurys,* 25 Conn.Supp. 495, 209 A.2d 526, 528 (1965). In *Miller v. Miller,* 1998 OK 24, ¶ 42, 956 P.2d 887, 903, the Oklahoma Supreme Court stated, "Misrepresentations which have been found to go to the essence of the marital relationship, generally in an action for annulment, include ... concealment of the fact that one party married the other for the sole purpose of obtaining a 'green card' from the Immigration Department." The Supreme Court cited a California case in support of its position on "green card" misrepresentation, *Rabie v. Rabie,* 40 Cal.App.3d 917, 115 Cal.Rptr. 594 (1974).

¶ 11 In *Rabie,* the California court upheld an annulment that had been sought by an American appellant against her Iranian husband. The evidence before the court showed that the husband had spent time looking for a woman to marry him in order to secure a green card and that he married the plaintiff even though "he possessed a very low opinion of her." *Id.* at 597. The marriage quickly disintegrated after the husband received his green card. *Id.* The Court of Appeal found that the trial court did not abuse its discretion in granting the annulment. The court found that there was substantial evidence that the defendant husband never intended to fulfill any of his marital duties to his wife, "especially the duties to remain faithful to [her] and to remain married to her." *Id.* It stated, "Where fraud is so grievous that it places the injured party in an intolerable relationship, it robs the marital contract of all validity." *Id.*

¶ 12 Another California Court of Appeal also addressed the issue of fraudulent inducement to marry involving a "green card" in *Liu v. Liu,* 197 Cal.App.3d 143, 242 Cal. Rptr. 649 (1987). In *Liu,* husband met wife, a citizen of Taiwan, in Taiwan after wife's sister had arranged for the parties to meet. *Id.* at 651. Husband traveled to Taiwan again approximately eight months later and married wife in a civil ceremony. *Id.* Husband returned home to the United States, but wife was not able to join him for several months until after she obtained a visa. *Id.* Wife refused to have sexual relations with husband and moved to a separate bedroom only four days after moving into husband's home. *Id.* Within a month, husband asked for a separation, and then later served wife with a petition for annulment. *Id.* Husband testified that he never had sexual relations with wife during the marriage. *Id.* Wife asserted that the marriage had been consummated and tried to introduce "newly discovered evidence" to that effect in a motion for new trial. *Id.* at 655.

¶ 13 The Court upheld the trial court's decision that husband's consent to marry was obtained by fraud. The Court stated, "An annulment may be had for fraud where a wife harbors a secret intention at the time of the marriage not to engage in sexual relations with her husband." *Id.* at 656. The Court found ample evidence to support the trial court's conclusion that the wife did not intend to engage in sexual relations with the husband. *Id.* The Court stated the following:

> First, respondent testified that he never had sexual relations with appellant. (See *Lamberti v. Lamberti* (1969) 272 Cal. App.2d 482, 485, 77 Cal.Rptr. 430 [annulment of an unconsummated marriage may be secured more readily than one where the parties have cohabited as husband and wife].) Secondly, there is evidence here that appellant had an ulterior motive for entering into the marriage: namely, to obtain a green card to allow her to reside in the United States. Finally, the rapidity with which the marriage deteriorated after appellant arrived in the United States also supports the trial court's findings.

*Id.*

¶ 14 In the present case, the trial court found the circumstances remarkably parallel to the *Liu* case. The evidence reveals that before Appellant met Appellee, she applied for a student visa to come to the United

States, but her application was denied. Appellee proposed to Appellant only two weeks after meeting her in person in Iran. Appellee also testified that after the two were married and her visa was approved, Appellant came home with him. During the flight home, Appellee claims that Appellant started complaining about his age, his appearance, and the way he walks. After they got off the plane, they went to Appellant's sister's home. Appellee claims that Appellant did not want to go home with him but wanted to stay at her sister's home. Appellee claims that he had to persuade her to go home with him. Appellant received her "green card" in the mail, then left Appellee only nine days after she arrived in the United States. Appellant stayed at her sister's home for three days, and Appellee and his mother had to go to the sister's home to try to convince Appellant to return to Appellee's home.

¶ 15 In February 2003, the parties had a wedding ceremony and reception. Appellee testified that the parties never consummated the marriage. He claims that he asked Appellant to have sex with him, but she refused. Appellee claims that Appellant left his home again on April 16, 2003, and stayed at her sister's home until August 12, 2003.

¶ 16 After returning home, Appellant spent a lot of time "chatting" on the internet. When she returned to Iran in late September 2003, Appellee hired a computer forensic recovery specialist to install software on the computer that Appellant had been using. The software recovered logs of several chats that appeared to have taken place between Appellant and an individual with the screen name "Pentagon 666 2000." Appellee claims that upon reading the chat logs, he concluded that the person Appellant was chatting with was her boyfriend and that he lived in Iran. The recovery specialist testified that he also recovered web cam images of Appellant, one of which showed Appellant partially undressed.

¶ 17 One of Appellant's co-workers, testifying on behalf of Appellee, stated the following: "Well, I just asked [Appellant] if she was married or single, and she said single." Appellee's sister testified that Appellee confided in her that he did not have a sexual relationship with Appellant.

¶ 18 Appellant claims that she had sexual intercourse with Appellee and denied that she married Appellee to obtain a green card. She claimed that Appellee told her not to come home after she went to her sister's house in April 2003. She denied chatting on the internet with anyone named Pentagon 666 2000. She claimed that she loved Appellee.

¶ 19 The trial court stated that it found Appellee "far more credible" and found "inconsistencies on the part of" Appellant. It found Appellee's demeanor to be "reassuring" and Appellant's "to be less reassuring."

¶ 20 "The trial court is entitled to choose which testimony to believe as the judge has the advantage over this Court in observing the behavior and demeanor of the witnesses. The court's judgment need not rest upon uncontradicted evidence." *Mueggenborg v. Walling*, 1992 OK 121, ¶ 7, 836 P.2d 112, 114. The trial court is "in the best position to evaluate the demeanor of the witnesses and to gauge the credibility of the evidence," and we will defer "to the conclusions it reaches concerning those witnesses and that evidence." *Beale v. Beale*, 2003 OK CIV APP 90, ¶ 6, 78 P.3d 973, 975.

¶ 21 The relief sought by Appellee in the form of an annulment is based on a claim of fraud. "Fraud is never presumed, but must be proven by clear and convincing evidence." *Tice v. Tice*, 1983 OK 108, ¶ 8, 672 P.2d 1168, 1171. The testimony of the parties conflicted on the issue of whether Appellant fraudulently induced Appellee to marry her. "When fraud is properly alleged by one party and denied by the other party, the existence or non-existence of fraud becomes a question of fact." *Id.* The trial court found that the facts supported Appellee's contention that Appellant fraudulently induced him into the marriage. After reviewing the record on appeal, we find no basis on which to conclude that this determination is against the clear weight of the evidence. We therefore affirm the decision of the trial court.

¶ 22 Appellant also contends that the trial court erred in refusing to enforce the parties' marriage contract which contained a provision for a dowry. "An annulment is said to 'relate back' and erase the marriage and all its implications from the outset." *Liu*, 242 Cal.Rptr. at 657. When consent to a marriage agreement has been procured by fraud and the marriage is therefore annulled, contract law precludes the enforcement of such an agreement. The trial court's finding of fraud is not against the clear weight of the evidence, nor does it violate established principles of equity. Such a finding erases the marriage, and with it, the right to any benefits under the contract. Having concluded that the marriage should be annulled, the trial court was correct in refusing to enforce the dowry provision.

¶ 23 Appellee asks this court to award him appeal-related attorney fees.[1] We find that Appellee should bear his own attorney fees for this appeal. *See Stepp v. Stepp*, 1998 OK 18, ¶ 20, 955 P.2d 722, 727 (holding parties responsible for their own appeal-related attorneys' fees).

## CONCLUSION

¶ 24 We find that the trial court's decision to annul the marriage at issue based on fraudulent inducement is supported by the evidence and further find no error in its refusal to enforce Appellant's dowry claim under the marriage contract. Accordingly, we affirm the decision of the trial court.

¶ 25 **AFFIRMED.**

GOODMAN, P.J., and FISCHER, J., concur.

---

1. In her brief on appeal, Appellant requested attorney fees and costs. With the affirmance of the trial court's decision, we find no equitable basis for such an award, nor has Appellant complied with Rule 1.14 of the Supreme Court Rules, and her request is therefore denied.